## PEOPLE v MEDLYN

Docket No. 177713. Submitted December 6, 1995, at Detroit. Decided
February 2, 1996, at 9:20 A.M. Leave to appeal sought.

Arthur Medlyn was convicted by a jury in the 36th District Court
of wilful neglect of duty with regard to his alleged failure to
report the physical and sexual assault of a prisoner in the
Wayne County jail that had been reported to him by the victim
during the course of the defendant's employment as a guard at
the jail. The defendant appealed and the Recorder's Court for
the City of Detroit, M. John Shamo, J., reversed the conviction.
The prosecution appealed by leave granted.

The Court of Appeals *held:*

The district court properly instructed the jury that a bad
purpose was essential for criminal liability and that the bad
purpose element could be met upon a mere showing that the
defendant failed to do what he was obligated to do. The evi-
dence, taken in a light most favorable to the prosecution, could
convince a rational trier of fact beyond a reasonable doubt that
the victim reported the physical and sexual assault to the
defendant and that the defendant omitted fulfilling his duties
in connection with such a report. The defendant wilfully and
deliberately did nothing. The omission violated MCL 750.478;
MSA 28.746. The evidence was sufficient to support the convic-
tion. The Recorder's Court erred in assessing the credibility of
the witnesses.

Reversed.

CRIMINAL LAW — WILFUL NEGLECT OF DUTY — PUBLIC EMPLOYEES —
BAD PURPOSE.

An action against a deputy sheriff alleging wilful neglect of duty
as a result of the defendant's failure to report the sexual
assault of a prisoner in a county jail requires that the prosecu-
tion establish that the defendant had a bad purpose in failing
to report the assault; the bad purpose element may be met
merely by showing that the defendant failed to do as required
(MCL 750.478; MSA 28.746).

REFERENCES

Am Jur 2d, Public Officers §§ 407, 412.
See ALR Index under Public Officers and Employees.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Brian T. Moody,* Assistant Prosecuting Attorney, for the people.

*Phillip D. Comorski,* for the defendant.

Before: MICHAEL J. KELLY, P.J., and REILLY and E. SOSNICK,* JJ.

MICHAEL J. KELLY, P.J. Defendant was convicted by a jury in the 36th District Court on September 24, 1992, of wilful neglect of duty, MCL 750.478; MSA 28.746, and was sentenced to ninety days in jail. Defendant appealed as of right to the Detroit Recorder's Court. On June 20, 1994, the Recorder's Court reversed defendant's conviction. The prosecution appeals by leave granted.

On February 12, 1992, at 7:00 A.M., defendant commenced his shift as a Wayne County deputy sheriff on the fifth floor of the old jail. Unknown to defendant, the preceding night, an inmate located in ward 502 on the fifth floor, had apparently been sexually assaulted while taking a shower.

The victim testified that when he woke the next morning, his breakfast had already been delivered and there were no deputies around. He testified that when defendant came to his ward later that morning to serve lunch, he told defendant, "Officer, I been beaten and sexually abused." According to the victim, defendant replied, "Ain't nothing wrong with you."

The victim further testified that, after three days passed, he began to be raped daily by the same two men in his ward, and they threatened to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

kill him if he told anyone about the assaults. The victim was transferred to another ward on March 13, 1992, when he was found beaten and raped in his cell. The victim never told any deputy, other than defendant, about the assaults. He was released on May 6, 1992.

The district court jury convicted defendant of wilful neglect of duty. On appeal to the Recorder's Court, defendant argued that the evidence presented was insufficient to sustain a conviction of wilful neglect of duty based on nothing more than an omission to perform a duty. The Recorder's Court agreed and reversed defendant's conviction in a one-page opinion, concluding that the verdict was contrary to the great weight of the evidence.

The people argue that the evidence, taken in the light most favorable to the prosecution, could convince a rational trier of fact beyond a reasonable doubt that the victim reported the sexual assault to defendant, and that defendant, under a legal duty to affirmatively act on, investigate, and process that information, wilfully and deliberately did nothing, which was proof enough to satisfy the statute.

Defendant argues that when "wilfulness" is used in a criminal statute, some element of "bad purpose" or "evil intention" must be present to make the conduct subject to criminal sanction—a mere accidental, inadvertent, or negligent violation is insufficient.

In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Wolfe,* 440 Mich 508, 525; 489 NW2d 748 (1992). Questions of law are reviewed de novo by this Court.

*People v Connor,* 209 Mich App 419, 423; 531 NW2d 734 (1995).

MCL 750.478; MSA 28.746 provides:

> When any duty is or shall be enjoined by law upon any public officer, or upon any person holding any public trust or employment, every wilful neglect to perform such duty, where no special provision shall have been made for the punishment of such delinquency, shall be deemed a misdemeanor, punishable by imprisonment in the county jail.

There is no dispute that defendant was a public officer, that he had a duty to report any allegations made by inmates to him, or that the victim was in fact sexually assaulted. Rather, the disputed issues are (1) whether the victim actually said anything to defendant about the assault, and (2) if so, whether defendant "wilfully" failed to report the victim's statement, or whether the fact that the statement went unreported was merely a nonculpable oversight.

The crux of this case hinges on what "wilful" means in the context of MCL 750.478; MSA 28.746. Few appellate cases are annotated under this particular statute; the only case located that discusses this aspect of the statute is *People v Bommarito,* 33 Mich App 385; 190 NW2d 359 (1971). *Bommarito* does not address the defendant's "mental state" or "culpability"; rather, the case focuses upon the actions of the defendant—did he do what he was obligated to do? The case is not helpful with regard to the parameters of a failure to act.

Both the parties and the district court relied on *Detroit v Pillon,* 18 Mich App 373; 171 NW2d 484 (1969), a prosecution for income tax evasion. In *Pillon,* the defendant was found guilty of "wilful failure to pay taxes due." On appeal, Pillon as-

serted that criminal sanctions may not be used to enforce payment of city taxes and that, although he refused to pay his taxes to test the ordinance, his conduct could not be termed "wilful" for penal purposes. This Court said, at p 376:

> We agree that some element of a "bad purpose" must be present to make the conduct subject to criminal sanctions. We conclude, however, that it is a sufficiently "bad purpose" that a taxpayer deliberately not pay the tax due when he knew he ought to pay.

One other relevant case is *People v Harrell*, 54 Mich App 554; 221 NW2d 411 (1974). There, the defendant was convicted of fleeing and eluding a police officer, MCL 750.479(a); MSA 28.747(1). The defendant challenged the exclusion of testimony that, two nights before the incident in question, the defendant had been beaten by the police. The Court of Appeals, at p 561, found no abuse of discretion by the trial court.

> Whatever may have been the defendant's motive for attempting to elude the police officers, both his own testimony and that of his companion clearly demonstrates that he did so voluntarily, consciously, and intentionally. The mere fact that he did, intentionally and knowingly, what the statute forbids is sufficient to warrant the finding that he acted willfully.

*Harrell* supports the proposition that actions that are "voluntarily, consciously, and intentionally" undertaken may be sufficient to constitute "wilfulness," even though the actions may have been taken from a "pure" or "good faith" motive. But *Harrell* does not establish that mere failure to take action is insufficient to support a criminal conviction absent a showing of a "bad purpose."

In *People v McCarty,* 303 Mich 629; 6 NW2d 919 (1942), the defendant ·was convicted of "wilfully, burning his personal property." The Court stated at p 633 that the statute

> required, in order to find the fire was wilfully set by defendant, that he knowingly and stubbornly and for the alleged unlawful purpose set the same. This excludes mere carelessness or accident.

Defendant also cites *United States v Smith,* 815 F2d 24 (CA 6, 1987), in which the defendant, an agent of the Drug Enforcement Administration, was charged with indirect criminal contempt arising out of his disclosure of investigative reports to a news reporter. The case merely restates that wilfulness requires a bad purpose. Although there are numerous cases discussing "wilfulness" in the context of committing a criminal act, such analysis is not compellingly transferable to an element of "wilfulness" where the crime is a failure to act.

The trial court instructed the jury, in essence, that a "bad purpose" was essential for criminal liability, but that the "bad purpose" element could be met upon a mere showing that defendant failed to do what he was obligated by his job description to do. That job description was supplied by deputy supervisor Jimmy Byrd, Director of Programs for the Wayne County Sheriff's Department. Referring to the people's exhibit I, the Wayne County Sheriff's Department policy manual, and the people's exhibit II, the Wayne County Jail operating manual, Byrd testified that a deputy sheriff in defendant's position had a duty to report when a crime was brought to his attention by an inmate. He testified:

> An officer is obligated to investigate and report any findings that he has of any criminal activities.

Assuming as we must that defendant breached his duty to report, may we further conclude that a presumption of wilfulness is thereby established as a matter of law? Stated another way, can the jury draw the inference from a failure to report that the intent with which the omission was accomplished was a wilful intent for a "bad purpose"? This is an extremely murky area.[1] Although there was no testimony by defendant, actual testimony regarding intent cannot be the reasonable objective of the law. Jurors may draw the inference regarding the intent with which an act was done as they draw all other inferences from any fact in evidence that to their mind fairly proves its existence. *Roberts v People*, 19 Mich 401 (1870). *People v Williams*, 6 Mich App 412; 149 NW2d 245 (1967). This Court, interpreting the word "wilfully" in the joyriding statute, MCL 750.413; MSA 28.645, said as follows:

> In this regard, also, the Michigan cases furnish little guidance. "Wilfully" has been variously defined as "an evil intent," "a bad purpose," or a "guilty knowledge." Additionally, cases from other jurisdictions are also of little use. However, most decisions have concluded that "wilfully," at least when used in a criminal context, implies a knowl-

---

[1] For a definition of "wilful" arising out of an omission, see subsection 6(8) of the Michigan Occupational Safety and Health Act, MCL 408.1006(8); MSA 17.50(6)(8), which provides:

"Wilful", for the purpose of criminal prosecutions, means the intent to do an act knowingly and purposely by an individual who, having a free will and choice, either intentionally disregards a requirement of this act, or a rule or standard promulgated pursuant to this act, or is knowingly and purposely indifferent to a requirement of this act, or a rule or standard promulgated pursuant to this act. An omission or failure to act is wilful if it is done knowingly and purposely. Wilful does not require a showing of moral turpitude, evil purpose, or criminal intent provided the individual is shown to have acted or to have failed to act knowingly and purposely.

edge and a purpose to do wrong. [*People v Lerma,* 66 Mich App 566, 570; 239 NW2d 424 (1976).]

Deputy supervisor Byrd supplied the context from which the jury could infer "bad purpose" in his response to a hypothetical question. Byrd opined that if a deputy on duty at the jail were in receipt of allegations of physical and sexual abuse by an inmate, the deputy had a threefold duty. First, the deputy was to remove the inmate from his ward; second, an investigative statement of the allegations must be documented in a report; and third, supervisory personnel should be notified. The trial court properly instructed the jury that a "bad purpose" was essential for criminal liability and that the "bad purpose" element could be met upon a mere showing that defendant failed to do what he was obligated to do. We believe, in the context of this case, the instruction was appropriate. We note that Byrd also testified that the daily activity log used by deputies assigned to the ward where the assault took place contained no entries by defendant reporting the victim's complaint. Defendant's co-worker, Deputy Sheriff Gregory Gordish, testified that he was on duty with defendant on February 12, 1992, that both he and defendant served lunch to the inmates in ward 502 on that day, and that the daily activity log obligation requires deputies to note in the log any events or occurrences in the jail in connection with or in relation to the inmates.

Under the circumstances, the evidence taken in a light most favorable to the prosecution could convince a rational trier of fact beyond a reasonable doubt that the victim reported his physical and sexual assault to the defendant and that defendant omitted fulfilling the duties outlined above. He wilfully and deliberately did nothing. Such omission in the face of dire consequences violated the statute and the public policy to pro-

tect prisoners reflected in the statute.[2] The reviewing Recorder's Court judge erred. The evidence and the inferences to be taken therefrom are sufficient to support the conviction of wilful neglect of duty. *People v Bommarito, supra.* The reviewing Recorder's Court judge erred in assessing the credibility of the witnesses. *People v Herbert,* 444 Mich 466; 511 NW2d 654 (1993).

Reversed.

---

[2] As a matter of public policy, on these facts, it would appear that a simple omission or a forgetting to report an incident probably should not be a sanctioned permissible defense. However, it is not necessary to enunciate a public policy interpretation here. It does not appear to have been relied on below, either in the district court or the Recorder's Court. Cf. *People v Bricker,* 389 Mich 524; 208 NW2d 172 (1973).