# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FONTAE EDRESE-DUANE SARGENT,

        Defendant-Appellant.

UNPUBLISHED
September 18, 2018

No. 339506
Muskegon Circuit Court
LC No. 16-004943-FH

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant, Fontae Edrese-Duane Sargent, appeals by right his jury convictions of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and failure to comply with the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, MCL 28.729(1)(a). Finding no error requiring reversal, we affirm.

## I. BACKGROUND

Sargent's exgirlfriend spoke with police officers to report a physical and sexual assault that she alleged he committed against her, as well as alleged threats of violence that he made against her and her son. Officers went to the exgirlfriend's house on Prince Lane, where Sargent answered the door. Sargent agreed to accompany the officers to the police department for an interview. Officers determined that Sargent was a convicted sex offender and required to comply with SORA, including by registering any change of address within three days. Sargent's registered address was a location on Howden Street, not Prince Lane. Sargent was arrested and charged with failure to register his address under SORA. Later, officers returned to Prince Lane to retrieve a handgun Sargent's exgirlfriend had disclosed and identified as belonging to Sargent, resulting in the additional charges for felon-in-possession and felony-firearm.

## II. OTHER-ACTS EVIDENCE

Sargent first argues on appeal that he was denied due process and a fair trial because his exgirlfriend was allowed to testify to alleged repeated sexual assaults and threats of physical violence, which were irrelevant to the charges, and without notice that other-acts evidence would be offered. We disagree.

Sargent did not object to the testimony at trial. Therefore, the issue is unpreserved for appeal. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Generally, a trial court's evidentiary rulings are reviewed for an abuse of discretion. *Id*. However, unpreserved claims are reviewed for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). The defendant must show that (1) error occurred, (2) the error was clear or obvious, and (3) the error affected the defendant's substantial rights. *Id*. at 763. The third requirement generally involves a showing that the error affected the outcome of the lower court proceedings. *Id*. Reversal is warranted only when the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; alteration in original).

The admissibility of evidence concerning other crimes, wrongs, or acts involves the interplay of Michigan Rules of Evidence 401, 402, 403, and 404(b). See *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Specifically, MRE 404(b) states as follows:

> **(b) Other crimes, wrongs, or acts.**
>
> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.
>
> (2) The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.[1]

In *VanderVliet*, 444 Mich at 74-75, the Michigan Supreme Court outlined a four-step process for evaluating the admissibility of evidence under MRE 404(b). First, "[t]he evidence must be relevant to an issue other than propensity under MRE 404(b) . . . ." *Id*. at 74. "Stated otherwise, the prosecutor must offer the other acts evidence under something other than a

---

[1] MRE 404(b)(2) has been substantively amended, effective January 1, 2018. All citations in this opinion refer to the former version of the rule in effect at the time of these proceedings. See MRE 404(b)(2), as amended November 10, 1994, 447 Mich clxvi.

character to conduct theory." *Id*. "Second, . . . the evidence must be relevant under MRE 402, as enforced through MRE 104(b),[2] to an issue or fact of consequence at trial." *Id*. Third, the trial court must determine, under MRE 403, whether the danger of undue prejudice substantially outweighs the probative value of the evidence considering the availability of other means of proof and other facts appropriate for making the decision. *Id*. at 74-75. Finally, the trial court may provide a limiting instruction under MRE 105[3] upon request. *Id*. at 75. Notably, "MRE 404(b) does not prohibit all other-acts evidence 'that may . . . give rise to an inference about the defendant's character,' but only that which is 'relevant *solely* to the defendant's character or criminal propensity.' " *People v Jackson*, 498 Mich 246, 276; 869 NW2d 253 (2015) (citation omitted).

MRE 404(b) applies to evidence of crimes, wrongs, or acts other than the conduct at issue in the case. *Id*. at 262. The conduct at issue in Sargent's trial was his possession of a firearm and his failure to comply with SORA requirements. Therefore, testimony concerning Sargent's assaults and threats against his exgirlfriend clearly fell within the scope of other-acts evidence as contemplated by MRE 404(b), and the trial court erred in failing to apply the rule of evidence. However, because Sargent has not demonstrated plain error affecting his substantial rights by the failure to apply MRE 404(b), we conclude that Sargent is not entitled to relief. In this case, the prosecution asked Sargent's exgirlfriend why she originally went to the police station. She responded with a lengthy answer that detailed the alleged sexual assaults and threats of violence. We conclude that this testimony was relevant to demonstrating why police were searching for Sargent to begin with and why they looked for him at Prince Lane. See, e.g., *id*. at 276 (finding testimony concerning the defendant's past conduct with a witness was admissible for the purpose of explaining the circumstances leading to the complainant's disclosure to the witness). Because the testimony was relevant to something other than propensity, Sargent has not demonstrated that an error occurred that was clear or obvious under the plain-error standard. Moreover, we conclude that the danger of undue prejudice was slight and, therefore, did not substantially outweigh the probative value of the testimony.

Sargent additionally argues that he was denied due process and a fair trial because the prosecution did not provide notice under MRE 404(b)(2) of its intent to introduce the testimony regarding other acts. We disagree. Although it was error for the prosecution not to provide notice, Sargent has not demonstrated how this failure affected his substantial rights. As discussed above, the lack of notice did not result in the introduction of substantively improper other-acts evidence. Thus, although Sargent "was not afforded his due opportunity to marshal arguments" against the testimony before it was introduced at trial, he has not demonstrated that any arguments "would have been availing, or would have affected the scope of testimony

---

[2] MRE 104(b) states, "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

[3] MRE 105 states, "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

ultimately presented to the jury." *Id*. at 278 (quotation marks and citation omitted). Moreover, while Sargent may have been surprised that this testimony was presented in the absence of the required notice, he was fully aware of the underlying facts because his exgirlfriend had already testified at the preliminary examination that she went to the police to report Sargent's assaults and threats. In any event, Sargent "has not demonstrated how he would have approached trial or presented his defense differently had he known in advance" that his exgirlfriend would testify as she did. *Id*. at 278-279. Thus, we conclude that Sargent was not denied due process or a fair trial by the prosecution's failure to follow MRE 404(b)(2).

Even if we were to conclude that this evidence was improperly admitted, Sargent cannot establish that its admission affected the outcome of the lower court proceedings. See *Carines*, 460 Mich at 763. Setting aside the other evidence of his guilt, Sargent was able to use the challenged testimony to support his defense theory. The circumstances surrounding the couple's relationship raised a concern regarding the exgirlfriend's credibility from the start,[4] which was further emphasized when Sargent testified and accused her of manipulating him and lying throughout her testimony. When the exgirlfriend described Sargent's assaults and threats at trial, it opened up an additional opportunity for Sargent to undermine her testimony by impeaching her with prior inconsistent statements regarding the details of the assaults and threats. While we recognize the inherent risk of prejudice arising from other-acts evidence of this nature, we find it improbable that admission of the challenged testimony affected the outcome of the trial in light of Sargent's ultimate use of the evidence in support of his defense.

## III. JURY INSTRUCTIONS

Sargent next argues that he is entitled to a new trial because the jury was not properly instructed regarding other-acts evidence. We disagree.

As an initial matter, we note that the trial court explicitly asked if the parties had additions or exceptions to the instructions as provided, and defense counsel answered no. This expression of satisfaction effectively waived any instructional error. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). But even if this issue had not been waived, it lacks merit. "[A] party may assign as error the failure to give an instruction only if the party objects on the record before the jury retires to consider the verdict." *People v Young*, 472 Mich 130, 132; 693 NW2d 801 (2005). Sargent did not request that the trial court instruct the jury concerning the limited relevance of other-acts evidence. Therefore, the issue is unpreserved. Generally, the decision of whether to give a jury instruction is reviewed for an abuse of discretion. *Id*. at 135. However, an unpreserved claim that the trial court failed to give a jury instruction is reviewed for plain error affecting substantial rights. *Id*. Reversal for plain error is appropriate only when the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *Carines*, 460 Mich at 763 (quotation marks and citation omitted;

---

[4] Sargent's exgirlfriend served as his counselor in a criminal sexual conduct therapy group upon Sargent's release from prison on parole. At some point during or after his required group therapy, they developed a sexual and romantic relationship that continued until Sargent was arrested in connection with this matter.

alteration in original).  Pursuant to MCL 768.29, "The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."

In this case, Sargent argues that the jury should have been given an instruction regarding its use of the other-acts evidence only for certain allowable purposes.  However, Sargent did not request that the trial court give any such instruction.  Because Sargent did not request the instruction, the trial court was not required to give it, and its failure to do so was not plain error affecting Sargent's substantial rights, nor was it grounds for reversal.

## IV.  SUFFICIENCY OF THE EVIDENCE

Sargent next argues that there was insufficient evidence to convict him of the charged offenses.  We disagree.

A challenge to the sufficiency of the evidence is reviewed de novo.  *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002).  To sustain a conviction, due process requires that there be "sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt."  *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992) (quotation marks and citation omitted).  In applying this standard, we view the evidence in the light most favorable to the prosecution, *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010), and "draw all reasonable inferences and make credibility choices in support of the jury verdict," *People v Cameron*, 291 Mich App 599, 613; 806 NW2d 371 (2011) (quotation marks and citation omitted).

To establish the elements of felon-in-possession, the prosecution must prove that "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424."  *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016).  With respect to a felony-firearm charge, the prosecution must prove that (1) the defendant possessed a firearm, (2) during the commission or attempted commission of any felony.  *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

As it relates to these convictions, Sargent only takes issue with the possession elements.  Possession may be actual or constructive; it may also be joint or exclusive.  *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011).  "[A] person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons . . . ."  *People v Minch*, 493 Mich 87, 92; 825 NW2d 560 (2012) (quotation marks and citation omitted).  Possession is a question of fact, and it can be proven by circumstantial evidence and reasonable inferences arising from the evidence.  *People v Strickland*, 293 Mich App 393, 400; 810 NW2d 660 (2011).

The evidence regarding possession in this case came primarily from the testimony of Sargent's exgirlfriend.  She stated that the gun belonged to Sargent, that Sargent's stepfather bought it for him, and that Sargent knew the gun was under the mattress.  Police found the gun under the side of the mattress that she said Sargent slept on.  She also testified that Sargent had a habit of removing the gun and walking around the house with it.  Sargent admitted knowing that there was a gun in the house, but he claimed that it belonged to his exgirlfriend and that he did

not know where it was. Such matters of witness credibility and the weight given to witness testimony are matters for the jury to decide. *People v Unger*, 278 Mich App 210, 228-229; 749 NW2d 272 (2008). In this case, it appears that the jury chose to believe the exgirlfriend's testimony over Sargent's alternative explanation. Additionally, Sargent had a key to the gun's safety mechanism on his key ring. Viewing the evidence in the light most favorable to the prosecution, a reasonable jury could conclude that Sargent knowingly had the power and the intention at a given time to exercise dominion or control over the gun. Thus, we conclude that there was sufficient evidence that Sargent possessed the gun in this case.

Sargent next argues that there was insufficient evidence that he willfully violated the SORA reporting requirement mandating that he report the Prince Lane address within three days of changing his residence. Sargent essentially argues that there was insufficient evidence that he changed his residence to Prince Lane. We disagree.

Under SORA, a Tier III offender, such as Sargent, is required to register his address four times a year. MCL 28.725a(3)(c). SORA also requires an offender to report a change in residence or domicile within three days. MCL 28.725(1)(a); MCL 28.722(g). Additionally, a sex offender who violates SORA is only guilty of a felony if the violation is committed "willfully." See MCL 28.729(1). Willfully "requires something less than specific intent, but requires a knowing exercise of choice." *People v Lockett (On Rehearing)*, 253 Mich App 651, 655; 659 NW2d 681 (2002).

Sargent's exgirlfriend testified that Sargent lived with her at Prince Lane on a permanent basis starting in January 2016. She claimed that by February or March 2016, Sargent was at the house all day and night and that there were not many nights that he was away from Prince Lane. Sargent had belongings at Prince Lane, including his television, clothes, shoes, toiletries, and grooming products. Sargent and his exgirlfriend shared closet and dresser space, and they shared a bed and bedroom. Sargent had a key to Prince Lane, his bank statements were mailed there, and a utility bill was in his name. Police found Sargent at Prince Lane before he was arrested. His exgirlfriend testified that she spoke with Sargent about registering Prince Lane as his address, but Sargent declined to do so. We conclude that, viewing this evidence in the light most favorable to the prosecution, a reasonable jury could conclude that Sargent established a residence at Prince Lane and knowingly exercised a choice not to register that address within three days. Therefore, we hold that there was sufficient evidence that Sargent willfully violated SORA's address registration requirements.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Sargent next argues that he was denied the effective assistance of counsel by defense counsel's failure to object to the testimony regarding the sexual assaults and threats of violence, as well as counsel's failure to request a jury instruction regarding other-acts evidence. We disagree.

Generally, a claim of ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review the trial court's findings of fact for clear error, and we review questions of constitutional law under a de novo standard. *Id*. However, although Sargent preserved the issue by raising it in a

motion to remand, our review remains limited to mistakes apparent on the record because a *Ginther*[5] hearing was never held. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

In order to find merit in a defendant's claim of ineffective assistance of counsel, the defendant must prove: (1) that the attorney made an error, and (2) that the error was prejudicial to the defendant. See *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). That is, first, the defendant must show that defense counsel's performance fell below an objective standard of reasonableness. *People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012). We must analyze the issue with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the test requires that the defendant "overcome the presumption that, under the circumstances, the challenged action [or inaction] might be considered sound trial strategy." *LeBlanc*, 465 Mich at 578 (quotation marks and citation omitted). "Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *Russell*, 297 Mich App at 716.

First, Sargent has not demonstrated that counsel made an error by failing to object to the testimony regarding the sexual assaults and threats of violence. As discussed above, had counsel objected, the trial court could have determined that the statements were admissible because they were relevant and were offered for something other than propensity. Because the trial court could have admitted the statements, counsel did not err by failing to raise a futile objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Even if it was error for counsel to fail to object to the statements, Sargent has not demonstrated that the error was prejudicial. There was sufficient evidence to find Sargent guilty of all three offenses without the contested testimony. Therefore, Sargent has not demonstrated that, but for counsel's failure to object, a different result was reasonably probable.

However, with respect to counsel's failure to request a jury instruction regarding the proper scope of other-acts evidence, we agree that counsel's performance fell below the standard of objective reasonableness. The jury heard evidence that Sargent may have committed a crime or crimes for which he was not on trial, and the jury should have been instructed to only consider that evidence for allowable, nonpropensity purposes. Nonetheless, we conclude that counsel's error was not prejudicial to Sargent. As already explained, there was a substantial amount of evidence supporting the jury's verdict in this case. Even if the jury had been properly instructed regarding its use of other-acts evidence, it is not reasonably probable that it would have acquitted Sargent. Therefore, we conclude that, absent counsel's error, a different result was not reasonably probable.

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## VI. PROSECUTORIAL MISCONDUCT

Sargent lastly argues that he was denied due process and a fair trial because of prosecutorial misconduct. Sargent claims that the prosecution committed misconduct when it elicited the testimony from Sargent's exgirlfriend regarding the sexual assaults and threats of violence and when it referenced that testimony during closing arguments. Sargent also argues that the prosecution committed misconduct by commenting on Sargent exercising his right to remain silent. We disagree.

Generally, an issue is properly preserved for appeal if it is raised before, addressed by, and decided by the lower court. *Cameron*, 291 Mich App at 617. However, "to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *Bennett*, 290 Mich App at 475. Here, Sargent did not object to any of the alleged instances of prosecutorial misconduct, nor did he request a curative instruction. Therefore, the issue is unpreserved, and we review for plain error that affected the defendant's substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate the prosecution's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70. A reviewing court cannot find error requiring reversal when a curative instruction could have alleviated the prejudicial effect of the alleged misconduct. *Unger*, 278 Mich App at 235.

Regarding the contested testimony, the testimony was relevant to demonstrating why Sargent's exgirlfriend first spoke to police in this case and, thus, why police were searching for Sargent at Prince Lane. Therefore, it was admissible under the *VanderVliet* test and under *Jackson*. Because the evidence was admissible, it is axiomatic that the prosecution did not commit misconduct by eliciting it. Likewise, the prosecution's reference to the exgirlfriend's testimony in closing argument was not improper because it was free to make arguments regarding the admitted evidence and inferences arising therefrom. *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). Additionally, a curative instruction could have alleviated any prejudicial effect, and thus, there was no plain error affecting Sargent's substantial rights.

"[I]n general, prosecutorial references to a defendant's post-arrest, post-*Miranda*[6] silence violate a defendant's due process rights under the Fourteenth Amendment of the United States Constitution." *People v Shafier*, 483 Mich 205, 212-213; 768 NW2d 305 (2009). Therefore, "a defendant's post-arrest, post-*Miranda* silence cannot be used to impeach a defendant's exculpatory testimony, or as direct evidence of defendant's guilt in the prosecutor's case-in-chief." *Id*. at 213-214. However, a single reference to a defendant's silence does not constitute a violation of the defendant's due process rights when the "reference is so minimal

---

[6] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

that 'silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference . . . .' " *Id*. at 215, quoting *Greer v Miller*, 483 US 756, 764-765; 107 S Ct 3102; 97 L Ed2d 618 (1987). For instance, the United States Supreme Court found no constitutional error in *Greer*, where the trial court sustained an objection to the prosecution's only question concerning the defendant's post-arrest, post-*Miranda* silence and instructed the jury that the question should be disregarded. *Greer*, 483 US at 764. In contrast, our Supreme Court held that the prosecution in *Shafier* "clearly crossed the line" when it referenced the defendant's silence in its opening statement, during direct examination of a police officer, while cross-examining the defendant, and in closing arguments. *Shafier*, 483 Mich at 215-218.

Here, Sargent points to one comment in the prosecution's closing argument in which the prosecution said, "[Sargent] said I'm not talking and that's his right and that's fine but he didn't offer an explanation when he could have." We agree that the prosecution plainly erred by referring to Sargent's silence in this context. *Id*. at 213-214. However, a curative instruction directing the jury to disregard the reference to Sargent's silence could have alleviated any prejudicial effect, and we will not reverse on the basis of prosecutorial error under these circumstances. See *Unger*, 278 Mich App at 235. Furthermore, we conclude that the prosecution's improper remark did not violate Sargent's right to due process, deprive him of a fair trial, or otherwise affect his substantial rights because the brief remark was so minimal that it was not submitted to the jury as evidence from which it was allowed to draw an inference of guilt. See *Shafier*, 483 Mich at 217-218.

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica